**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ROBERT CARLOW, JAMES PERRY**
**WILLIAM PERRY and DAVID GORMAN**

**v.** **C.A. No.: 04-325-S**

**STANLEY MRUK and**
**CONRAD BURNS, in their personal and**
**official capacities**

**OJBECTION TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Now come the defendants, Stanley Mruk and Conrad Burns, and hereby object to the Motion for Summary Judgment filed by the plaintiffs, Robert Carlow, James Perry, William Perry and David Gorman in the above captioned matter. In support thereof, the defendants state that the plaintiffs are not entitled to judgment as a matter law. The defendants further rely on the memorandum of law, and the exhibits appended thereto, filed contemporaneously herewith, as well their previously memorandum of law in support of their motion for summary judgment, including the exhibits appended thereto, both of which are incorporated herein as if set forth in full.

WHEREFORE, the defendants, Stanley Mruk and Conrad Burns, respectfully request that this Honorable Court deny the motion of the plaintiffs, Robert

Carlow, James Perry, William Perry and David Gorman, for summary judgment.

Respectfully submitted,

Defendants, STANLEY MRUK AND CONRAD BURNS

By their attorneys,

George H. Rinaldi (# 5599)
Little Medeiros Kinder Bulman & Whitney
72 Pine Street
Providence, RI 02903
Tel: (401)272-8080
Fax: (401)272-8195

Dated: August 31, 2005

## CERTIFICATION

I hereby certify that on the 31st day of August, 2005, I caused a true and accurate copy of the within Objection to be mailed, by first class mail, postage prepaid, to Gary D. Berkowitz, Esq., 1 James Street, Providence, RI 02903

Marianne Gabriel

O:\Data\8823\Dktct\Obj\05610.doc

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**ROBERT CARLOW, et al**

**v.** **C.A. No.: 04-325-S**

**STANLEY MRUK, et al**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I. INTRODUCTION

This matter is the result of certain decisions made by the defendant Conrad Burns during the 2002 Annual Meeting of the Coventry Fire District ("2002 Meeting") in his capacity as the Moderator of the Coventry Fire District ("District").[1] The Complaint in this matter appears to allege that the plaintiffs had a right under the First Amendment of the Constitution of the United States ("First Amendment") to speak at and videotape the 2002 Meeting even though they are not residents of the District, (Complaint, ¶ 12, 13, 18, 20, 23, 24, 27, 28, and 30). The parties have filed cross motions for summary judgment. The defendants have argued that, as non-residents, the plaintiffs had no First Amendment right to speak or videotape the 2002 Meeting and that the Complaint must be dismissed pursuant to the absolute and/or qualified immunity doctrines. The plaintiffs' motion argues that their rights under the First Amendment were violated when Robert Gorman was ejected from the 2002 Meeting for violating a rule of order requiring all persons to remain seated,[2] and when the media, but not the general public, was allowed to

---

[1] For a detailed discussion of the circumstances surrounding this Complaint, see the defendants' memorandum of law in support of their motion for summary judgment at pages 1-5.
[2] The motion also argues that the threatened ejection of Robert Carlow violated his First Amendment rights. Mr. Burns, however, did not threaten Carlow with ejection, (Exhibit 1 – Burns at 16). Assuming *arguendo*,

videotape the 2002 Meeting. For the reasons set forth in the defendants' memorandum of law in support of their motion for summary judgment, as well as those set forth herein, the plaintiffs' motion should be denied.

II. ARGUMENT

A. Gorman Did Not Have A First Amendment Right To Disrupt The 2002 Meeting By Violating A Rule of Order Which Preserves The Integrity Of The Votes Taken At The Meeting.

Assuming *arguendo*, that the Complaint states a cause of action based on the removal of Gorman from the meeting, the plaintiffs are not entitled to summary judgment because the ejection of Gorman was necessary to enforce a valid rule of order designed to ensure the efficient functioning of the 2002 Meeting and ensure the integrity of all votes taken at that meeting. In accordance with Rhode Island law, individuals like the plaintiffs who are not eligible to vote on the District's affairs are allowed to attend the District's annual meetings, but they must sit separate and apart from the voters. R.I. Gen.Laws § 45-3-26. Because there are no physical barriers between the sections, no one is allowed to leave his or her seat once the annual meeting has started. This ensures that non voters do not enter the voting section and improperly cast a vote on the District's affairs. (Motions are usually resolved by voice or hand vote.) This rule of order is announced at the start of all annual meetings, including the 2002 Meeting. (Exhibit 1 – Deposition of Burns ("Burns") at 5-6 and 14)

Gorman was ejected for violating this rule of order. He left his seat in the non-voter section and began to walk towards the voting section. He then went to the back of the hall and began to walk in circles, ultimately purchasing a soda from a nearby

---

he did, it would have been permissible for the same reasons as the ejection of Gorman was permissible. For purposes of simplicity, this memorandum will only address Gorman's claim.

vending machine. While he was doing this, Mr. Burns in accordance with his statutory obligation to maintain order during the meeting, R.I. Gen.Laws § 45-3-18, repeatedly ordered him to return to his seat. When Gorman refused to do so, Mr. Burns ordered him removed from the meeting in accordance with the authority vested in him by Rhode Island law. R.I. Gentles § 45-3-19. (Exhibit 1 - Burns at 14-15)[3] The plaintiffs make much of their claim that Gorman was merely buying a soda when he was ejected. It was not the act of buying a soda which resulted in Gorman's ejection, it was his failure to follow a rule of order that required him to remain in his seat so that the integrity of the votes could be maintained.

While the plaintiffs argue that this was done to prevent him from speaking, this was clearly not the case. As an initial matter, Gorman, as a non-resident, had no right to speak at the meeting. (Defendants Memorandum in support of their Motion for Summary Judgment ("Defendants' Memorandum") at 11-19). Moreover, Mr. Burns did not even know who Gorman was at the time he was ejected. (Exhibit 1 – Burns at 13). All Mr. Burns knew was that an individual was violating the meeting's rules of order and, if left unhindered, threatened the integrity of all of the votes taken at the 2002 Meeting. (Exhibit 1 – Burns at 14-15). It is simply impossible to discriminate on the basis of the content of an individual's speech when Mr. Burns did not know who the individual was, let alone what he intended to say. Jones v. Heyman, 888 F.2d 1328, 1332 (11th Cir. 1989). The plaintiff in Jones, like Gorman, was ejected prior to expressing the substance of his views on an issue. In light of this, the Court declined "to rule that his expulsion was based on disapproval of the content of his opinion in view of this fact."

[3] Gorman was not the only person ejected from this meeting. Towards the end of the 2002 Meeting, Mr. Burns also ordered the removal of a resident for disrupting the meeting. (Exhibit 2 - Burns Affidavit, ¶ 8).

Jones, 888 F.2d at 1332. In so doing, the Court expressly rejected the argument that, based on Jones' opening comments and mannerisms, the mayor could have reasonably inferred that his comments on the agenda item would have been critical and therefore the ejection was impermissibly based on his viewpoint. Like the mayor in Jones, Mr. Burns had to make an on the spot decision when faced with deliberate defiance of the Rules of Order designed to ensure the integrity of the voting process and smooth functioning of the meeting.

Moreover, numerous federal courts have rejected arguments that the ejection of individuals for violating the rules of order that govern the meetings of public bodies constitutes a violation of the First Amendment. Eichenlaub v. Township of Indiana, 385 F.3d 274, 281 (3rd Cir. 2004) (No First Amendment violation where the plaintiff was ejected based on a "content neutral desire to prevent his badgering, constant interruptions, and disregard for the rules of decorum."); Kindt v. Santa Monica Rent Control Board, 67 F.3d 266, 271 (9th Cir. 1995) (Kindt "was not kept from speaking because of the content of his speech, but because he submitted chits[, the process by which members of the public request to speak on a specific item on the agenda,] that were not held open for public commentary until Item 13 on the agenda."); Collinson v. Gott, 895 F.2d 994, 1008 (4th Cir. 1990)(Upholding ejection for refusing to limit public comment to agenda items as required by rules.); Jones v. Heyman, 888 F.2d 1328, 1332 (11th Cir. 1989)(Upholding ejection that "resulted not from disapproval of Jones' message but from his disruptive conduct and failure to adhere to the agenda item under discussion."); Tannenbaum v. City of Richmond Heights, 663 F.Supp. 995, 997 (E.D.Mo.

1987) (Upholding ejection for interrupting meeting by failing to follow content neutral ordinance restricting speech to two minutes after recognition by chairman.)

The plaintiffs' reliance on Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999) is misplaced. The plaintiff in Iacobucci was arrested for disorderly conduct and disrupting a public meeting after he refused to stop videotaping a discussion which took place in a hallway after a public meeting of the Pembroke Historic District Commission. Immediately prior to this incident, Iacobucci had videotaped the meeting itself, a right afforded to him by the Massachusetts Open Meetings Act. Iacobucci ultimately filed suit against several individuals on several different theories, but only state law claims and § 1983 claim based on false arrest and use of excessive force against the police officers went forward.[4] In refusing to apply the qualified immunity doctrine, the Court held that a reasonable police officer should have known that Iacobucci "had a constitutional right to act as he did without being arrested for disorderly conduct[.]" Id. at 24. It is also worth noting that, in Iacobucci, the meeting "proceeded without disruption and the Commission completed its business unimpeded[.]" Id. This was not the case at the 2002 Meeting where Gorman's actions forced Burns to interrupt the business of the meeting and, if left unchecked, could have jeopardized the integrity of the votes taken at the meeting. Similarly, while in the hallway, Iacobucci "had a right to be there," and to film the activity. Id. at 25. Gorman, however, had no right to be where he was when Burns was

[4] The initial suit named the members of the Commission and contained a general federal count alleging that the defendants, *inter alia*, "deprived [him of his right] ... to the unfettered exercise of the right of assembly and free speech[.]" Iacobucci v. Boulter, 1997 WL 258494 at 3 (D.Mass. 1997). The district court granted the defendants' summary judgment motion on all counts except those for use of excessive force and emotional distress against the police officer defendants prior to trial. Id. at 4

forced to eject him to maintain order and the integrity of the votes to be taken at the 2002 Meeting.[5]

The purpose served by Gorman's ejection was simple and critical: to preserve the integrity of the votes and ensure the smooth and efficient functioning of the meeting. It is well established that "[t]here is a significant governmental interest in conducting orderly, efficient meetings of public bodies." City of Cocoa, Florida v. Rowe, 358 F.3d 800, 803 (11th Cir. 2004); Collinson, 895 F.2d at 1000 (Phillips, J., concurring) (The "disruption of the orderly conduct of public meeting is indeed one of the substantive evils that government has a right to prevent.") (Internal modification and quotation omitted) Moreover, the *sine qua non* of the District's annual meetings is voting. The residents vote on the budget, the tax rate and candidates for office. Ensuring the integrity of those votes is a key part of every moderator's job. Given the lack of physical barriers and the use of voice and hand votes, the remain seated rule is certainly a reasonable way to achieve that goal, and Gorman flouting of that amble justification for his ejection. As a reasonable restriction on speech in a designated, and thus non-public, forum, Ridley v. Massachusetts Bay Transportation Authority, 390 F.3d 65, 76 n. 4 (1st Cir. 2004), the rule of order and its enforcement are valid restrictions on the First Amendment. Cornelius v. NAACP Legal Defense & Educational Fund, 473 U.S. 788, 806, 105 S.Ct. 3439, 3451 (1985) (Restrictions in a non-public forum on speech are permissible so long as they are "reasonable in light of the purpose served by the forum and viewpoint neutral.")

[5] It should also be noted that "the nature of a [meeting of a public body] means that a speaker can become 'disruptive' in ways that would not meet the test of actual breach of the peace, or of 'fighting words' likely to promote immediate combat. A speaker may disrupt a [meeting of a public body] by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the [public body] is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers." White v. City of Norwalk, 900 F.2d 1421, 1425 (9th Cir. 1990) (citations omitted)

The decision to eject Gorman was "a judgment call that a presiding officer and parliamentarian must make without the benefit of leisure reflection. *** [Courts] should not inquire whether we as presiding officers would have handled the matter in the same way." Jones, 888 F.2d at 1334. Such concerns are not limited to the Eleventh Circuit. Similar concerns were expressed by Judges Phillips and Wilkinson in Collinson, *supra.*[6] Since Gorman was ejected from the 2002 Meeting for a content-neutral reason, his failure to follow a rule of order designed to ensure the integrity of the votes taken at the meeting, his ejection did not constitute a violation of his First Amendment rights. The plaintiffs' motion for summary judgment should, therefore, be denied.

B. Allowing The Media To Videotape The 2002 Meeting Did Not Create A First Amendment Right For The Plaintiffs To Do So.

The First Amendment does not guarantee the right of the plaintiffs to videotape the District's annual meetings. (Defendants' Memorandum at 22-24)[7] Nevertheless, the plaintiffs contend that their First Amendment rights were violated because the media was allowed to videotape the 2002 Meeting while they were prohibited from doing so. The plaintiffs have offered no legal authority for this contention. Instead, they rely on the well established principle that "[t]he First Amendment does not guarantee the press a constitutional right of special access to

[6] "It is hard to imagine circumstances in which the tolerance commanded by the immunity doctrine for possible mistakes of judgment by public officials is more appropriate and necessary than those confronted by officials presiding over potentially explosive public hearings." Collinson, 895 F.2d 994 at 1004 (Phillips). "Every presiding official in a public meeting must, at some time, make a spontaneous judgment as to whether a speaker is abusing the forum. Section 1983 was not intended to make actionable isolated incidents in which politicians show poor judgment at a public meeting in calling someone out of order." Collinson, 895 F.2d 994 at 1005 (Wilkinson)

[7] The plaintiffs admit that "there is arguably no right to videotape governmental proceedings *per se*[.]" (Plaintiffs' Memorandum of law in support of their motion for summary judgment at 3).

information not available to the public generally." Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658 (1972).

By its very terms, Branzburg allows for the possibility that public officials may accord to the press special privileges. Various courts of appeal have likewise suggested that affording the media special privilege is constitutionally permissible. The United States Court of Appeals for the Second Circuit has recently opined that the "exclusion of identified individuals in pursuit of a greater flow of information to the public, for example, by preferring in some general way court admission for members of the 'press' is likely to pass constitutional muster." Huminski v. Corsones, 386 F.3d 116, 149 (2nd Cir. 2004); see also The Putnam Pit, Inc. v. City of Cookeville, Tennessee, 221 F.3d 834, 840 (6th Cir. 2000)("[S]some circumstances may dictate distinguishing journalists from the general public[.]"); Smith v. Plati, 258 F.3d 1167, 1178 (10th Cir. 2001) ("[T]he press, generally speaking, do not have a special right of access to government information not available to the public.") Public officials routinely afford the media special privileges not available to the general public, including courts reserving seats for members of the press at noteworthy trials. In re Providence Journal Company, 293 F.3d 1, 16 (1st Cir. 2002) (So called "Plunder Dome" trial of Vincent Cianci).

This is a natural result of the role of the media in American society. The press is often referred to as the fourth branch of the government and "perform[s] the important function of informing the public of actions taken by government agencies and officials." Yohe v. Nugent, 321 F.3d 35, 43 (1st Cir. 2003). The United States Supreme Court has long recognized the special role the media plays in American society. Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 719-720, 51 S.Ct. 625, 632 (1931)

(Observing that "the administration of government has become more complex ... emphasizes the primary need of a vigilant and courageous press, expecially (sic) in great cities.") The plaintiffs' theory ignores this role of the press. Moreover, under the plaintiffs' theory, anytime a public entity voluntarily grants a special privilege to the media, the entity must grant the same privilege to every citizen or run afoul of the First Amendment. Not only would such a constitutional requirement invite chaos, but it would also likely impede the ability of the media to do its job. In this case, for example, such a ruling would likely lead to the banning of all videotaping, which is constitutionally permissible, Branzburg, *supra,* but necessarily desirable.

Assuming *arguendo* that the media only videotape rule is considered to be a time, place and manner restriction as the plaintiffs' suggest, the rule passes constitutional muster. For First Amendment purposes, the 2002 Meeting is designated public forum, which in the First Circuit, is treated as a non-public forum. Ridley, 390 F.3d at 76 n. 4. Thus, the restriction on videotaping is valid so long as it is "reasonable in light of the purpose served by the forum and viewpoint neutral." Cornelius, 473 U.S. at 806, 104 S.Ct. at 3451. Mr. Burns announced the no videotape rule because, prior to the start of the meeting attendees shined the lights from their video cameras in Mr. Burns' eyes and the use of video cameras by members of the audience intimidates the voters. As Mr. Burns testified at his deposition, these are not issues with regard to the use of video cameras by the press. (Exhibit 1 - Burns at 8 and10) Videotaping has no viewpoint and even if it were considered to have one, the ban on the general public applied equally to those who spoke in support of the Chief Mruk and those who would be critical of him and is therefore content-neutral. The rule also provided a reasonable way of ensuring that

Mr. Burns was not distracted from his duties by having camera lights shined in his eyes. The rule therefore ensured the smooth functioning of the 2002 Meeting and it is well established that "[t]here is a significant governmental interest in conducting orderly, efficient meetings of public bodies." Rowe, 358 F.3d at 802-803; Collinson, 895 F.2d at 1000 (Phillips, J., concurring) (The "disruption of the orderly conduct of public meeting is indeed one of the substantive evils that government has a right to prevent.") (Internal modification and quotation omitted).

While Mr. Burns could have imposed a blanket ban on videotaping without violating the First Amendment rights of either the plaintiffs or the media, Mr. Burns decided to make an allowance for media in recognition of their special role in American society and the media's respect for the smooth functioning of the 2002 Meeting. His action, which was upheld by the District's voters, is constitutionally permissible and as such the plaintiffs' motion for summary judgment should be denied.

## III. CONCLUSION

David Gorman was ejected from the 2002 Meeting because he flouted a rule of order designed to ensure that only those eligible to vote on the District's affairs did so. The general public was prohibited from using video cameras because they were being used to interfere with the 2002 Meeting. In taking the actions that he did, Mr. Burns ensured that the 2002 Meeting fulfilled its purpose in an orderly fashion. As such his actions did not violate the First Amendment rights of the plaintiffs. For the reasons set forth herein, as well as those set forth in the memorandum of law in support of their motion for Summary Judgment, the plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

Defendants, STANLEY MRUK AND
CONRAD BURNS

By their attorneys,

George H. Rinaldi, (#5599)
Little Medeiros Kinder Bulman & Whitney
72 Pine Street
Providence, RI 02903
Tel: (401)272-8080
Fax: (401)272-8195

Dated: August 31, 2005

**CERTIFICATION**

I hereby certify that on the 31st day of August, 2005, I caused a true and accurate copy of the within Memorandum to be mailed, by first class mail, postage prepaid, to Gary D. Berkowitz, Esq., 1 James Street, Providence, RI 02903

O:\Data\8823\Dktct\Memspt\05615.doc